IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| BRIT UW LIMITED, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| MONICA BRIONES, | ) | |
| INDIVIDUALLY AND AS NEXT | ) | |
| FRIEND OF OCEAN MICHAEL | ) | NO. SA-11-CV-00994-DAE |
| BRIONES, KHLOE MILI BRIONES | ) | |
| AND ADRIAN A. DAVILA, | ) | |
| MINOR CHILDREN, AND ON | ) | |
| BEHALF OF ALL HEIRS AND | ) | |
| THE ESTATE OF MICHAEL | ) | |
| JAMES BRIONES, DECEASED, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

ORDER: (1) GRANTING PLAINTIFF'S MOTION FOR SUMMARY
JUDGMENT; (2) DENYING AS MOOT PLAINTIFF'S PARTIAL MOTION TO
DISMISS; (3) DENYING DEFENDANT'S MOTION FOR SUMMARY
JUDGMENT; (4) DENYING AS MOOT DEFENDANT'S MOTION TO
STRIKE; (5) DENYING DEFENDANT'S MOTION TO CONTINUE;
(6) DENYING DEFENDANT'S AMENDED MOTION FOR LEAVE TO
AMEND ANSWER AND COUNTERCLAIM

On May 9, 2013, the Court heard a Motion for Summary Judgment

and a Partial Motion to Dismiss brought by Plaintiff Brit UW Limited and a

Motion for Summary Judgment brought by Defendant Monica Briones. (Docs.

## 29, 30, 39.) Additionally, before the Court are three related motions brought by

1

Defendant Monica Briones, including a Motion to Continue Plaintiff's Motion for Summary Judgment, an Amended Motion for Leave to Amend Answer and Counterclaim, and a Motion to Strike.  (Docs. ## 31, 38, 48.)  Richard H. Gateley, Esq., appeared at the hearing on behalf of Plaintiff Brit UW Limited; Byron T. Stone, Esq., Reynaldo L. Diaz, Jr., Esq., and Thomas A. Crosley, Esq., appeared on behalf of Defendant Monica Briones.  After reviewing the motions and the supporting and opposing memoranda, the Court **GRANTS** Plaintiff's Motion for Summary Judgment (Doc. # 30), **DENIES AS MOOT** Plaintiff's Partial Motion to Dismiss (doc. # 29), **DENIES** Defendant's Motion for Summary Judgment (doc. # 39), **DENIES AS MOOT** Defendant's Motion to Strike (doc. # 48), **DENIES** Defendant's Motion to Continue (doc. # 31), and **DENIES** Defendant's Amended Motion for Leave to File Amended Answer and Counterclaim (doc. # 38).

BACKGROUND

This case arises out of an insurance coverage dispute involving a commercial general liability policy issued by Plaintiff Brit UW Limited ("Brit") to "Kicaster Korner Bar," a sole proprietorship wholly owned by Ricardo Briones, Jr. ("Appendix to MSJ" (hereinafter "App."), doc. # 30[1] at 35.)  Defendant Monica

---

[1] The numbering continues sequentially in the appendices to Docs. ## 33, 36, 39, 46.

Briones and those she represents are relatives of Ricardo Briones, Jr. and obtained a default judgment for $5 million in a wrongful death lawsuit against "Kicaster Korner Bar," described as "a Texas Corporation," in the 407th Judicial District Court of Bexar County, Texas.  (App. at 152–56.)

I.      The Insurance Policy

On April 12, 2008, Ricardo Briones, Jr. completed a Tavern PDQ Supplemental Application, listing the insured as "Ricardo Briones, Jr., Kicaster Korner Bar."  (App. at 8.)  Around a month later, he completed a Commercial Insurance Application for Policy Number RM12976.  (App. at 3.)  The Applicant Information section states that the named insured is "Kicaster Korner Bar," an "individual."  (Id.)

On May 12, 2008, Brit and other Underwriters at Lloyds issued an insurance policy, Policy No. RMI12976 (the "Policy"), to Kicaster Korner Bar. (App. at 35.)  The Policy, effective from May 12, 2008 to May 12, 2009, provided commercial general liability coverage with a limit of $500,000 per occurrence and an aggregate limit of $500,000.  (Id.)  The Policy designated the insured as an "Individual" and named "Kicaster Korner Bar" as the insured on the Policy's Declarations page.  (Id.)  Section II of the Policy, entitled "Who is an Insured," provides: "If you are designated in the Declarations as . . . [a]n individual, you and

3

your spouse are insureds, but only with respect to the conduct of a business of which you are the sole owner." (App. at 43.) It also lists as an insured "[y]our legal representative if you die." (App. at 44.) Additionally, the Policy contains a provision specifically excluding coverage for newly-acquired or newly-formed entities. (See App. at 44, 64.)

After the Policy was issued, Associated Services Inspection, Ltd. completed an inspection of the insured premises on June 6, 2008. (App. at 10.) An inspector interviewed Ricardo Briones, Jr. and confirmed that he was the owner of Kicaster Korner Bar and operating the business as an "individual." (Id.)

II.    The Underlying Lawsuit

On February 1, 2009, Michael James Briones—brother of Ricardo Briones, Jr.—was assaulted and stabbed to death while on the premises of Kicaster Korner Bar. (App. at 108.) The parties dispute whether Michael Briones was an employee of Kicaster Korner Bar or merely a paying patron. On April 9, 2009, Defendant Monica Briones, widow of Michael Briones, sent a letter to Ricardo Briones, Jr. and his insurance carrier indicating that she would be pursuing a claim for damages relating to the death of her husband. (App. at 260.) Brit subsequently conducted an investigation of the incident.

On August 3, 2009, Robert Murphy of Gulf Coast Claims Services

4

("Gulf Coast"), an agent of Brit, sent a letter addressed to "Kicaster Korner Bar, Attn: Ricardo Briones, Jr." indicating that Brit was reserving its right to deny coverage for the stabbing incident because Michael Briones was an employee of Kicaster Korner Bar at the time of the assault.  (App. 261–262.)  The letter explains that the Policy precludes coverage for bodily injuries to an employee of the insured arising out of and in the course of his employment or when performing duties related to the conduct of the insured's business.[2]  (Id.)

On December 29, 2009, Defendant Monica Briones (hereinafter "Defendant"), acting through counsel, sent a Stowers demand letter to Gulf Coast. (App. 263–266.)  The demand letter identifies the insured as "Richard Briones, DBA Kicaster Korner."  (App. at 263.)  In early February 2010, Defendant sent a second demand letter to Gulf Coast, again listing the insured as "Richard Briones,

---

[2]  The Policy states:

This insurance does not apply to . . . "Bodily injury" to:
(1)    An "employee" of the insured arising out of and in the course of:
       (a)    Employment by the insured; or
       (b)    Performing duties related to the conduct of the insured's business; or
(2)    The spouse, child, parent, brother or sister of that "employee" as a consequence of Paragraph (1) above.

(App. at 37, 261–262.)

DBA Kicaster Korner."  (App. at 269.)  Soon thereafter, Gulf Coast notified

Defendant that Brit was denying Defendant's claim for the policy limits because

the liability of Kicaster Korner Bar was "unlikely and certainly not reasonably

clear" and the claim was "not covered under the Policy."  (App. at 270–71.)

On March 14, 2010, Ricardo Briones, Jr. died.  (App. at 94.)  On

August 23, 2010, the County Court of Wilson County, Texas appointed his wife,

Jennifer Rose Herrera-Briones, as the Independent Administratrix of his estate.

(Id.)

On March 31, 2010, an entity known as Kicaster Korner Bar & Grill,

LLC was formed and the certificate of formation was filed with the Texas

Secretary of State.  (App at 101–03.)  The registered agent for the entity was listed

as "Jennifer Herrera-Briones"—the widow of Ricardo Briones, Jr.  (App at 102.)

On August 13, 2010, Defendant filed suit against "Adobe Contracting,

Inc. dba Kicaster Korner Bar" in the 407th Judicial District Court of Bexar County,

Texas ("the Underlying Lawsuit").  (App. at 107–12.)  Among other things, the

Original Petition brought causes of action for wrongful death and negligence

relating to the stabbing of Michael Briones on the premises of Kicaster Korner Bar.

(Id.)  Shortly thereafter, the Estate of Ricardo Briones, Jr. made a claim under the

Policy based on the lawsuit.  On September 16, 2010, Brit sent a letter to counsel

for the Estate of Ricardo Briones, Jr. indicating that Brit was denying coverage because "Adobe Contacting, LLC d/b/a Kicaster Korner Bar" was not an insured under the Policy.  (App. 274–76.)

On December 6, 2010, Defendant filed her First Amended Petition in the Underlying Lawsuit.  (App at 102.)  The First Amended Petition named "Kicaster Korner Bar" as defendant and stated that Kicaster Korner Bar was a "Texas Corporation operating and doing business in the State of Texas."[3]  (Id.) The petition also provided that "Kicaster Korner Bar" could be served through its "registered agent" Jennifer Herrera-Briones.  (App. at 128–29.)  Defendant served the First Amended Petition on Jennifer Herrera-Briones.  (App. at 149; doc. # 9 ¶ 10.)  In a January 10, 2011 letter to counsel for the Estate of Ricardo Briones, Jr., Brit acknowledged receipt of a second claim based on Defendant's First Amended Petition, but indicated that Brit would not defend the lawsuit because the named defendant, "Kicaster Korner Bar, a Texas corporation," was not insured under the Policy.  (App. 277–281.)  Jennifer Herrera-Briones, although served, never filed an answer to the Underlying Lawsuit.

---

[3]  In her Answer to the Complaint, Defendant states that she sued the entity "Kicaster Korner Bar" and that "at the time of the filling of her First Amended Original Petition, the Texas Secretary of State's records indicated that 'Kicaster Korner Bar' was a Texas corporation."  (Doc. # 9 ¶ 10.)

On April 27, 2011, the 407th Judicial District Court of Bexar County, Texas entered default judgment against "Kicaster Korner Bar" for $5 million. (App. at 152–57.)  The Default Judgment stated that "Kicaster Korner Bar" had been served through its "registered agent" Jennifer Herrera-Briones and attached a copy of Defendant's First Amended Original Petition.  (App. at 152.)

In early November 2011, counsel for Defendant sent a letter to Brit demanding payment under the Policy based upon the Default Judgment and threatening legal action if payment was not received within ten days.  (Doc. # 1 ¶ 13; Doc. # 9 ¶ 13.)

III.   <u>Procedural History</u>

On November 23, 2011, Brit filed suit against Defendant in this Court, seeking a declaratory judgment pursuant to 28 U.S.C. § 2201 that (1) the Default Judgment entered in the Underlying Lawsuit is against "Kicaster Korner Bar, a Texas Corporation"; (2) "Kicaster Korner Bar, a Texas Corporation," is not insured under the Policy; and (3) there is no duty to indemnify "Kicaster Korner Bar, a Texas Corporation" under the Policy.  (Doc. # 1 ¶¶ 15–17.)  Additionally, Brit seeks a declaration that Michael Briones was an employee of Kicaster Korner Bar and, thus, excluded from coverage under the Policy.  (<u>Id.</u> ¶ 18.)  Alternatively, Brit seeks a declaration that the Policy should be reformed to include an Assault and

8

Battery exclusion, "as this exclusion was part of the quotation and a condition of binding the Policy."  (Id. ¶¶ 14, 20–21.)

On April 6, 2012, Defendant filed an Answer and a Counterclaim against Brit.  (Doc. # 9.)  In her Answer, Defendant brings the affirmative defenses of estoppel, waiver, and unclean hands.  (Id. ¶¶ 22–25.)  In her Counterclaim, Defendant seeks, among other things, a declaratory judgment that (1) the Default Judgment in the Underlying Lawsuit was against "Kicaster Korner Bar"; (2) "Kicaster Korner Bar" is insured under the Policy; and (3) Brit is liable to Defendant for the full amount of the Default Judgment.  (Id. ¶ 28.)

On January 30, 2013, Brit filed a Partial Motion to Dismiss Defendant's Counterclaim, arguing Defendant lacks standing to assert several grounds for declaratory judgment under Federal Rule of Civil Procedure 12(b)(1), or alternatively, that she fails to state a claim under Rule 12(b)(6).  (Doc. # 29.)  Brit filed a concurrent Motion for Summary Judgment on its claims for declaratory judgment.  (Doc. # 30.)

On February 11, 2013, Defendant filed a Motion to Continue Plaintiff's Motion for Summary Judgment, arguing further discovery was necessary.  (Doc. # 31.)  Shortly thereafter, on February 13, 2013, Defendant filed a Motion for Leave to File Amended Answer and Counterclaim (doc. # 32) and a

Response in opposition to Plaintiff's Motion for Summary Judgment (doc. # 33). On February 20, 2013, Brit filed a Reply in support of its Motion for Summary Judgment.  (Doc. # 36.)  Brit also filed a Response in opposition to Defendant's Motion for Leave to Amend Answer and Counterclaim, arguing that amendment was untimely under the Scheduling Order and prejudicial to Brit because the proposed amendments withdrew certain key judicial admissions.  (Doc. # 37.)

On February 25, 2013, Defendant filed an Amended Motion for Leave to Amend Answer and Counterclaim (doc. # 38) and a cross Motion for Summary Judgment (doc. # 39).  On February 28, 2013, Brit filed a Response in opposition to Defendant's amended Motion for Leave to Amend, arguing that it constituted a "second attempt to withdraw key judicial admissions."  (Doc. # 43.)  On March 7, 2013, Brit filed a Response to Defendant's Motion for Summary Judgment.  (Doc. # 45.)

On May 7, 2013, Defendant filed a Motion to Strike, objecting to certain evidence that Brit produced in support of its Response to Defendant's Motion for Summary Judgment.  (Doc. # 48.)  On May 8, 2013, Brit filed a Response in opposition to Defendant's Motion to Strike.  (Doc. # 51.)

## STANDARD OF REVIEW

Summary judgment is granted under Federal Rule of Civil Procedure 56 when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); see also Cannata v. Catholic Diocese of Austin, 700 F.3d 169, 172 (5th Cir. 2012).  The main purpose of summary judgment is to dispose of factually unsupported claims and defenses.  Celotex Corp. v. Catrett, 477 U.S. 317, 323–24 (1986).

The moving party bears the initial burden of demonstrating the absence of any genuine issue of material fact.  Id. at 323.  If the moving party meets this burden, the non-moving party must come forward with specific facts that establish the existence of a genuine issue for trial. ACE Am. Ins. Co. v. Freeport Welding & Fabricating, Inc., 699 F.3d 832, 839 (5th Cir. 2012).  In deciding whether a fact issue has been created, "the court must draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence."  Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150 (2000).  However, "[u]nsubstantiated assertions, improbable inferences, and unsupported speculation are not sufficient to defeat a motion for summary judgment."  Brown v. City of Hous., 337 F.3d 539, 541 (5th Cir. 2003).  "Where the record taken as a whole could not lead a rational trier of

fact to find for the non-moving party, there is no 'genuine issue for trial.'"

Matsuhita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986)

(quoting First Nat'l Bank of Ariz. v. Cities Serv. Co., 391 U.S. 253, 289 (1968)).

DISCUSSION

I.    Brit's Motion for Summary Judgment

In its Motion for Summary Judgment, Brit asks the Court to grant

final judgment in its favor by declaring that:

(1)    Kicaster Korner Bar, a Texas Corporation, is not an insured under the Policy.

(2)    The Default Judgment in the Underlying Lawsuit was entered against Kicaster Korner Bar, a Texas Corporation.

(3)    Brit has no duty to pay Defendants/Counter-Plaintiffs anything whatsoever and is not legally obligated to pay.

(4)    Briones' affirmative defense of unclean hands is without merit.[4]

(Doc. # 30 ¶ 23.)  For the reasons given below, the Court GRANTS Brit's Motion

for Summary Judgment.

---

[4]  Defendant has indicated that she is "abandoning this defense in light of the evidence discovered in this case."  (Doc. # 59 at 2.)

A.    Who is Insured Under the Policy

The defining feature of any sole proprietorship as a business entity is its identity with its proprietor.  A sole proprietorship is "[a] business in which one person owns all the assets, owes all the liabilities, and operates in his or her personal capacity."  Black's Law Dictionary (9th ed. 2009).  In CU Lloyd's of Tex. v. Hatfield, 126 S.W.3d 679 (Tex. App. 2004), the court held that an unnamed sole proprietor was an insured under the sole proprietorship's insurance policy which named only the business as the insured, reasoning that a sole proprietorship has no separate legal existence apart from its sole proprietor.  Id. at 684–85 (citing Ideal Lease Serv., Inc. v. Amoco Prod. Co., 662 S.W.2d 951, 952 (Tex. 1983)); see also CA Partners v. Spears, 274 S.W.3d 51, 62 n.6 (Tex. App. 2008) ("Texas law regards the sole proprietor and the sole proprietorship as one and the same person.").

When the fatal stabbing of Michael Briones occurred in 2008, the record is clear that "Kicaster Korner Bar" was a sole proprietorship wholly owned by Ricardo Briones, Jr.  The Policy itself names the business, "Kicaster Korner Bar," as the insured on the Declarations page and designates the insured as an "Individual"—not a partnership, limited liability company or corporation.  (App. at 35.)  The Policy further provides: "If you are designated in the Declarations as . . .

13

[a]n individual, you and your spouse are insureds, but only with respect to the conduct of a business of which you are the sole owner." (App. at 43.) Thus, Ricardo Briones, Jr., as the sole proprietor, was an insured under the Policy. Additionally, following her husband's death, Jennifer Herrera-Briones became an "insured" under the Policy in her capacity as administrator of her husband's estate because the Policy provides coverage for "[y]our legal representative if you die." (See App. at 44.)

The terms of the Policy exclude coverage for successor entities such as Kicaster Korner Bar & Grill, LLC. There is a Policy endorsement that deletes the following provision concerning newly-acquired entities:

> Any organization you newly acquire or form other than a partnership, joint venture or limited liability company, and over which you maintain ownership or majority interests, will qualify as a named insured if there is no other similar insurance available to that organization . . .

(See App. at 44, 64.) The Policy itself also provides:

> No person or organization is an insured with respect to the conduct of any current or past partnership, joint venture or limited liability company that is not shown as a named insured in the declarations.

(App. at 44.) These provisions make clear that the Policy does not insure any unnamed entity, whether a corporation, partnership, joint venture or limited liability company. Moreover, the Policy endorsement removes any coverage for

14

newly-acquired entities.  Thus, the successor entity formed shortly after Ricardo Briones, Jr.'s death, Kicaster Korner Bar & Grill, LLC, is not insured under the Policy.

   B.  <u>Liability for Default Judgment in the Underlying Lawsuit</u>

    At the heart of this coverage dispute is the question of whether Kicaster Korner Bar, the sole proprietorship, was properly named and served with process in the Underlying Lawsuit such that the Default Judgment should stand against it.

    Brit contends that, while the First Amended Petition names "Kicaster Korner Bar" as defendant, it also provides that "Kicaster Korner Bar" is a "Texas Corporation" that may be served through its "registered agent," Jennifer Herrera-Briones.  (<u>See</u> App. at 128.)  Brit argues that counsel for Defendant was already on notice of Kicaster Korner Bar's status as a sole proprietorship and that Defendant admitted that her counsel relied upon the records of the Texas Secretary of State in determining who to sue in the Underlying Lawsuit.  Brit contends that it cannot be held liable for the error of Defendant's counsel.

    Defendant argues that she properly named Brit's insured, "Kicaster Korner Bar," in the First Amended Petition, even if she was mistaken as to Kicaster Korner Bar's status as a sole proprietorship.  She further contends that the

proper person was served because Jennifer Herrera-Briones is an insured under the Policy as the legal representative for the estate of her late husband.  Defendant also argues that Brit had a duty to defend its insured if there was any possibility that a claim had been asserted against its insured.

The common-law doctrines of misnomer and misidentification are of particular relevance to this case.  Under Texas law, a misnomer occurs when a plaintiff sues the correct entity but misnames it.  Chilkewitz v. Hyson, 22 S.W.3d 825, 828 (Tex. 1999).  A "misnomer does not invalidate a judgment as between parties where the record and judgment together point out, with certainty, the persons and subject matter to be bound."  Chen v. Breckenridge Estates Homeowners Ass'n, Inc., 227 S.W.3d 419, 420 (Tex. App. 2007).  By contrast, a misidentification arises when two separate legal entities actually exist, and a plaintiff mistakenly sues the entity with a name similar to that of the correct entity. Chilkewitz, 22 S.W.3d at 828.  "Put another way, misnomer occurs when a party misnames either herself or the opposing party in a pleading, but the correct parties are involved; misidentification occurs when a party named in the pleading is not the party with an interest in the suit."  Maher v. Herrman, 69 S.W.3d 332, 338 (Tex. App. 2002).

16

In the Underlying Lawsuit, Defendant sued an entity that never existed—a corporation named "Kicaster Korner Bar" with Jennifer Herrera-Briones as its agent for service of process.  (See doc. # 38-2 ¶ 2.) Although the state-court petition did not use the full name of the limited liability company, it identified "Kicaster Korner Bar" as having a registered agent who only appears in the records of the Texas Secretary of State as the registered agent for Kicaster Korner Bar & Grill, LLC.  Defendant has admitted in her Answer that she relied upon the Texas Secretary of State's records in determining who to sue in the Underlying Lawsuit.  (Doc. # 9 ¶ 10.)  Thus, the record shows that Defendant intended to sue Kicaster Korner Bar & Grill, LLC, the entity listed in the records of the Texas Secretary of State, although she committed a misnomer by not including its full name and by representing that the company was a corporation rather than a limited liability company.  The Court notes that Kicaster Korner Bar & Grill, LLC received actual notice of the suit because the entity was served through its registered agent, Jennifer Herrara-Briones.

As discussed above, Kicaster Korner Bar & Grill, LLC is a legally separate entity from Kicaster Korner Bar, the sole proprietorship, and is not insured under the Policy.  Thus, this case not only involves misnomer, but also misidentification.  "Misidentification occurs when two separate legal entities with

similar names actually exist, and the plaintiff sues the wrong entity by mistake."

Cooper v. D&D G.C. of Gilmer, Inc., 187 S.W.3d 717, 720 (Tex. App. 2006).

Defendant attempted to sue the wrong entity—Kicaster Korner Bar & Grill, LLC.

Because Defendant did not sue the sole proprietorship, the default judgement

entered in the Underlying Lawsuit cannot stand against Kicaster Korner Bar, the

sole proprietorship.  "Judgment shall not be rendered against one who was neither

named nor served as a party defendant."  Werner v. Colwell, 909 S.W.2d 866, 870

(Tex. 1995); see Dezso v. Harwood, 926 S.W.2d 371, 373 (Tex. App. 1996) ("If

the wrong defendant was served, the default judgment cannot stand.").

Moreover, insofar as Defendant argues that Brit had a duty to defend

its insured in the Underlying Lawsuit because the First Amended Petition

potentially brought a claim against its insured, this argument fails.  An insurer's

duty to defend is determined by the allegations in the pleadings and the language of

the insurance policy.  Nat'l Union Fire Ins. Co. v. Merch. Fast Motor Lines, Inc.,

939 S.W.2d 139, 141 (Tex. 1997).  Under the so-called "eight-corners" or

"complaint-allegation" rule, an insurer's duty to defend is determined by the

third-party plaintiff's pleadings, considered in light of the policy provisions,

without regard to the truth or falsity of those allegations.  GuideOne Elite Ins. Co.

v. Fielder Road Baptist Church, 197 S.W.3d 305, 308 (Tex. 2006) (citing Argonaut

18

Sw. Ins. Co. v. Maupin, 500 S.W.2d 633, 635 (Tex. 1973)).  The rule takes its

name from the fact that only two documents are ordinarily relevant to the

determination of the duty to defend: the policy and the pleadings of the third-party

claimant.  GuideOne, 197 S.W.3d at 308 (citing King v. Dallas Fire Ins. Co., 85

S.W.3d 185, 187 (Tex. 2002)).  Courts do not require insurers to imagine factual

scenarios which might trigger coverage.  Pine Oak Builders, Inc. v. Great Am.

Lloyds Ins. Co., 279 S.W.3d 650, 655 (Tex. 2009).

      Taking the allegations of the First Amended Petition as true,

Defendant sued a corporation.  Defendant states that this was "simply a mistaken

factual assertion about the legal form of Kicaster Korner Bar," and "merely a

clerical error."  (Doc. # 33.)  However, Brit is entitled to rely upon the allegations

in the pleadings without consideration of their truth or falsity.  See GuideOne, 197

S.W.3d at 308.  Moreover, the person that Defendant served in the Underlying

Lawsuit appeared in the Texas Secretary of State's records as the registered agent

for an entity established in 2010—Kicaster Korner Bar & Grill, LLC.  The Policy

could not have insured an entity which did not exist in 2008, and Brit had no duty

to defend a party who was not an insured under the terms of the Policy.

      Defendant points to the caption of her First Amended Petition,

arguing that she correctly named the insured—"Kicaster Korner Bar."  However,

"only those matters alleged in the body of the petition are matters upon which defendant is placed upon notice that plaintiff intends to prove upon trial.  This rule is predicated upon the principle that pleadings are to place the opposing party on notice of that which plaintiff intends to prove." CT Lambert v. Dealers Elect. Supply, Inc., 629 S.W.2d 61, 63 (Tex. Civ. App. 1982).  Defendant made factual allegations regarding the entity that she chose to sue, and those factual allegations indicated to Brit that she did not sue the insured under the Policy.

Defendant also argues that she properly sued the insured because she served Jennifer Herrera-Briones.  However, Jennifer Herrera-Briones was not a party to the lawsuit unless she was named as a party defendant.  Reynolds v. Haws, 741 S.W.2d 582, 589 (Tex. App. 1987) ("[A]n entity is not a party to a lawsuit without being so named.").  Further, "a corporation's registered agent is not the corporation." Louis v. Disc. Tire Co. of Tex., Inc., 1 S.W.3d 698, 700 (Tex. App. 1999) (stating that when a plaintiff sues a corporation as an independent entity, the corporation—not the registered agent—is the actual litigant sued).  Thus, Jennifer Herrera-Briones was not before the state court as a party in the Underlying Lawsuit, even though she received actual notice of the suit when served.  Additionally, Jennifer Herrera-Briones did not receive proper service on behalf of the sole proprietorship because she was not served in her capacity as administrator

20

of her late husband's estate.  See Werner, 909 S.W.2d at 870 (finding judgment against the trustee of a benefit plan improper because the trustee was sued in her individual capacity).

Defendant also argues that Brit had a duty to notify Defendant of her mistake as to the proper entity to sue.  Under Texas law, "[a] suit mistakenly filed against the wrong defendant imposes no duty on the correct defendant to intervene and point out plaintiff's error.  Moreover, the rule applies even though the correct defendant may have known of the suit."  Matthews Trucking Co. v. Smith, 682 S.W.2d 237, 239 (Tex. 1984).  Thus, Brit was under no obligation to inform Defendant of her error in naming a corporation called "Kicaster Korner Bar" as defendant.

Moreover, Defendant's defense of estoppel fails.  The doctrine of equitable estoppel requires: (1) a false representation or concealment of material facts; (2) made with knowledge, actual or constructive, of those facts; (3) with the intention that it should be acted on; (4) to a party without knowledge or means of obtaining knowledge of the facts; (5) who detrimentally relies on the representations.  Ulico Cas. Co. v. Allied Pilots Ass'n, 262 S.W.3d 773, 778 (Tex. 2008).  Defendant argues that Brit repeatedly referenced its insured in pretrial correspondence as "Kicaster Korner Bar" and did not inform Defendant of the

21

business's status as a sole proprietorship.  However, the undisputed summary

judgment evidence indicates that Defendant's attorney, Reynaldo Diaz, wrote two

demand letters in 2009 and 2010 which identified the insured as "Richard Briones,

DBA Kicaster Korner."  (See App. at 263, 269.)  The correspondence upon which

Defendant bases her non-disclosure argument was sent by Brit's agent Gulf Coast

in response to these letters from Mr. Diaz.  Thus, Defendant was already on notice

that Brit's insured was a sole proprietorship.  For this reason, any estoppel defense

pertaining to Brit's failure to correct a misconception regarding the legal status of

its insured fails.

Defendant's waiver defense fares no better.  "Waiver is the intentional

relinquishment of a right actually known, or intentional conduct inconsistent with

claiming that right." Ulico Cas. Co., 262 S.W.3d at 778.  The elements of waiver

are "(1) an existing right, benefit, or advantage held by a party; (2) the party's

actual knowledge of its existence; and (3) the party's actual intent to relinquish the

right, or intentional conduct inconsistent with the right." Id.  In this case, Brit

continually asserted Policy defenses and reserved its rights in various letters to

Ricardo Briones, Jr. and later to the Estate of Ricardo Briones, Jr.  At no time did

Brit advise Defendant as to whether she had sued the correct entity.  Thus, Brit did

not waive any existing right to defend its insured.

22

For all these reasons, the Court GRANTS Brit's Motion for Summary Judgment and therefore DENIES AS MOOT Brit's alternative Motion to Dismiss. The Court notes that it need not decide Brit's claim (1) that Michael Briones was an employee of Kicaster Korner Bar and (2) its alternative claim for contract reformation. These claims are defenses to Brit's duty to indemnify its insured. They are rendered moot because the Court has found that Brit's insured is not bound by the default judgment in the Underlying Lawsuit. The Court DENIES AS MOOT Defendant's Motion to Strike evidence relating to Brit's claim that Michael Briones was an employee of Kicaster Korner Bar and its claim for contract reformation. Additionally, because Defendant's cross Motion for Summary Judgment seeks the exact opposite result of Brit's Motion for Summary Judgment, it is DENIED.

II.    Defendant's Motion for Continuance

Defendant moves for a continuance under Federal Rule of Civil Procedure 56(f). To justify a continuance, "the Rule 56(f) motion must demonstrate 1) why the movant needs additional discovery and 2) how the additional discovery will likely create a genuine issue of material fact." Stearns Airport Equip. Co. v. FMC Corp., 170 F.3d 518, 535 (5th Cir. 1999).

Defendant believes she is entitled to "discover additional documents to determine what Brit actually knew about the legal entity status of its insured and when it knew this information" and states that Brit objected to her interrogatories relating to this topic. (Doc. # 31 at 2.) However, Brit did, in fact, produce documents responsive to Defendant's requests despite its objections. (Doc. # 34 ¶¶ 5, 7.) Defendant does not argue that Brit's responses were insufficient. Moreover, Defendant has filed a cross motion for summary judgment in this case; it is far from apparent how additional discovery will create a genuine issue of material fact where Defendant already believes none exists.

Finally, Defendant has not diligently pursued discovery in this case. See Baker v. Am. Airlines, Inc., 430 F.3d 750, 756 (5th Cir. 2005) ("Moreover, another criteria for relief under Rule 56(f) is that the movant must have exercised due diligence in discovery."). Defendant initiated discovery only thirty days before the discovery deadline of January 25, 2013. (See doc. # 18.) She never previously sought to take depositions, although Defendant possessed Brit's initial and supplemental disclosures for a period of several months. Defendant waited until almost two weeks after the discovery deadline passed to file her Motion for a Continuance based upon the need for further discovery. At no time did Defendant seek to modify the Scheduling Order. Once a scheduling order has been entered,

according to Federal Rule of Civil Procedure 16, it "may be modified only for good cause and with the judge's consent."  Fed. R. Civ. P. 16(b)(4).  Defendant has offered no explanation why she could not have conducted discovery within the deadline set by the Court or timely sought to extend the discovery period.  This Court will not permit Defendant's lack of diligence to disrupt the previously agreed upon course of litigation.  Defendant's Motion for a Continuance is, therefore, DENIED.

III.   <u>Defendant's Motion for Leave to Amend Answer and Counterclaim</u>

        "Rule 16(b) governs amendment of pleadings after a scheduling order deadline has expired."  <u>S&W Enters., L.L.C. v. S. Trust Bank of Ala., NA</u>, 315 F.3d 533, 536 (5th Cir. 2003).  When a motion for leave to amend is filed after the applicable deadline, "[o]nly upon the movant's demonstration of good cause to modify the scheduling order will the more liberal standard of Rule 15(a) apply to the district court's decision to grant or deny leave."  <u>Id.</u>

        Defendant seeks leave to file a second proposed Amended Answer and Counterclaim.  (Doc. # 38.)  However, the deadline for Defendant to seek leave to amend her pleadings passed on August 30, 2012.  (Doc. # 18.)  Defendant filed her first motion to amend on February 13, 2013 (doc. # 32) and the present motion to amend on February 25, 2013.  Because Defendant's request for leave to

25

amend was filed after the applicable deadline set by the Scheduling Order had expired, Plaintiff must show good cause to modify the Scheduling Order.

Whether "good cause" exists primarily centers on the diligence of the party seeking to modify the scheduling order.  See Marathon Fin. Ins., Inc. v. Ford Motor Co., 591 F.3d 458, 470 (5th Cir. 2009).  "Four factors are relevant to good cause: (1) the explanation for the failure to timely move for leave to amend; (2) the importance of the amendment; (3) potential prejudice in allowing the amendment; and (4) the availability of a continuance to cure such prejudice."  Id. (citations omitted) (internal quotation marks omitted).

In Defendant's original Motion for Leave to Amend, she stated amendment was necessary to cure "alleged errors raised by Plaintiff's Motion to Dismiss, clarifying the defenses previously pleaded defenses, and to assert one defense that was not discernible at the time of the original pleading, but which has been revealed in the course of discovery."  (Doc. # 32.)  In her Amended Motion for Leave, Defendant seeks to assert an affirmative defense of "ambiguity."  (Doc. # 38.)  Defendant argues that she needs to add an ambiguity defense because Brit's Motion for Summary Judgment relied "almost entirely" on Ricardo Briones, Jr.'s Policy applications and a contract reformation argument.  (Id. ¶ 5.)  However, Brit did not seek summary judgment on its alternative claim for contract reformation.

26

(See doc. # 30 at 9–10).  Moreover, the pivotal issue presented in Brit's Motion for

Summary Judgment is whether Brit had a duty to defend an entity which was never

a named insured.  While Brit did rely on the Policy applications completed by

Ricardo Briones, Jr. as additional evidence the insured under the Policy was an

"Individual," these applications were disclosed to Defendant in July 2012.  (Doc.

# 43 ¶ 6.)  Defendant has not pointed to any newly discovered facts that would

have prevented her from timely seeking to leave to amend.

　　　　　Additionally, an ambiguity defense is unavailing to Defendant.  First,

the Policy itself establishes that Kicaster Korner Bar was a sole proprietorship; the

Policy applications merely further corroborate this fact and do not create an

ambiguity.  Defendant admits that her attorney possessed a copy of the Policy prior

to filing the Underlying Action.  (Doc. # 33-2 at 2 ¶ 5.)  Second, an ambiguity

defense is not relevant to Brit's cause of action for reformation.  The purpose of

reformation is to correct a mutual mistake made in "preparing" a written

instrument so that it truly reflects the original agreement of the parties.  Technical

Automation Servs. Corp. v. Liberty Surplus Ins. Corp., 673 F.3d 399, 408 (5th Cir.

2012) (citing Cherokee Water Co. v. Forderhause, 741 S.W.2d 377, 379 (Tex.

1987)).  An ambiguity defense would apply to the resolution of inconsistencies

within the Policy itself, but not to determining whether there was a mutual mistake. Moreover, the Court has determined that Brit's contract reformation claim is moot.

Finally, Brit will suffer prejudice through the proposed amendments. Defendant seeks to remove her judicial admission that she relied on the records of the Texas Secretary of State in identifying the proper party to sue in the Underlying Lawsuit.  (Compare doc. # 9 ¶¶ 8 & 10 with doc. # 38-1 at 2–3.) Because this admission is critical to Brit's argument on the merits, Brit would suffer prejudice by its removal, and no continuance will cure that prejudice.

In sum, Defendant has failed to demonstrate good cause for amendment under Rule 16(b).  As such, the Court DENIES her Amended Motion for Leave to Amend Answer and Counterclaim.

## CONCLUSION

For the reasons stated above, the Court **GRANTS** Plaintiff's Motion for Summary Judgment (Doc. # 30), **DENIES AS MOOT** Plaintiff's Partial Motion to Dismiss (doc. # 29),  **DENIES** Defendant's Motion for Summary Judgment (doc. # 39),  **DENIES AS MOOT** Defendant's Motion to Strike (doc. # 48), **DENIES** Defendant's Motion to Continue (doc. # 31), and **DENIES**

Defendant's Amended Motion for Leave to Amend Answer and Counterclaim

(doc. # 38).

IT IS SO ORDERED.

DATED: San Antonio, Texas, June 25, 2013.

_____
David Alan Ezra
Senior United States District Judge